WELSH & HOGUE v. W. C. LEMERT, Appellant.

**Land Sale: Evidence.** In an action to recover commissions, it is admissible that plaintiff claimed to have defendant's farm for sale.

**Same.** Statements made by defendant, in the absence of plaintiff, to an intending purchaser, in regard to selling personal property with the farm, and his liability for commissions, are inadmissible.

*Same : Construction of Writing.* A letter to one who is negotiating the sale of a farm, that owner wishes to sell his horses, etc., also, and would need to retain part of the land temporarily, if the personal property was not sold, is not a statement that sale must embrace both farm and personal property.

*Same.* A letter is addressed to an agent at Bloomington, where he is attempting a sale, stating that a reduced commission is to be paid if the sale is at a certain price. It was an answer to one in which the agent stated he would try to sell to one Blue, would see others if he failed, and thought he would make a sale before he left. *Held,* the letter did not limit authority to seeking buyers in Bloomington.

**Practice:** JOINT PLAINTIFF. Where an agreement is made to pay one a commission for selling land, and he then forms a partnership which sells the land, the partners may sue jointly for the commission.

*Appeal from Hamilton District Court.*—HON. D. R. HINDMAN, Judge.

SATURDAY, OCTOBER 13, 1894.

JAMES WELSH is one of the plaintiff firm. Defendant was the owner of a section and a half of land in Hamilton county, Iowa, and he agreed with James Welsh that if he could find him a purchaser for the farm he would pay him a commission. At first there

was an agreement that if a purchaser was found that
would pay for the farm forty thousand dollars, the
commission should be six hundred dollars.   Afterward
it was agreed that if it was sold for thirty thousand
dollars the commission should be three hundred dollars.
After the agreements were made, Welsh formed a part-
nership with Hogue in his real estate work, and the
firm, in pursuance of the agreement with Welsh, took
steps to find a purchaser for the farm.   The farm was
sold to one Adkins for thirty thousand  dollars, and
the plaintiff brings this action to recover the commis-
sion.   Some particular facts can best be stated in con-
nection with the consideration of the questions to
which they apply.   The cause was submitted to a jury
that returned a verdict for plaintiffs, and the defend-
ant appealed.—*Affirmed.*

*Wesley Martin* and *Geo. Wambach* for appellant.

*J. L. Kamrar* for appellees.

GRANGER, C. J.—I.   It is urged that the plaintiff
firm can not maintain this suit because the contract
was made with Welsh alone, and the rule is cited
whereby an agent can not delegate his authority to
another so as to bind the principal for his acts.   This
case involves no such question.   There was no
delegation of authority here.   All that can be
said, because of the creation of the firm, is that
Welsh brought Hogue to his assistance in doing the
work; and we know of no rule to prevent one, under
contract, from securing such aid in carrying out its
terms, except in  cases where the contract is induced,
not alone for the accomplishment of some particular
work or purpose, but by the fact or belief that the per-
sonal service of the person employed will give to the
work an especial value or importance.   The case of
painting is an apt illustration, where the fact that it

is made by a particular artist constitutes its chief value. It is manifest that defendant attached no importance to Hogue's personal service in finding a purchaser for the farm. A sale was what he wanted, and, if Hogue secured a purchaser through the aid of some third party, it was just as satisfactory; and if, because of the services of such third party, Hogue should assign to him one half of his claim, we know of no reason why the parties should not jointly maintain a suit to recover for the services under the contract made with Welsh. The situation is not materially different here. Welsh took Hogue as a partner in his work, and together they found a purchaser, who was accepted, and it is now a question only of to whom is the commission due. The petition does not aver contractual relations between the defendant and the firm, but avers the contract to have been with Welsh, as it really was, and then that Hogue united with Welsh as a partner, and both did the work, by reason of which Hogue is a half owner of the debt. Welsh's transaction with Hogue would operate to assign to him one half of the claim. The fact that they came into court as a firm, rather than as individuals, is of no legal significance. If it was an unexecuted contract, and the firm was attempting to enforce contractual relations or obligations with defendant in its execution, the situation would be different, for we are not holding that Welsh could bring Hogue into such a relation to defendant. Appellant cites *Smalley v. Greene*, 52 Iowa, 241, 3 N. W. Rep. 78, and *Antrobus v. Sherman*, 65 Iowa, 230, 21 N. W. 579, but they are rather in support of, than against, our conclusion. They are not, however, in point. The first cited case is too manifestly so to deserve comment. The latter case involves the question of the liability of a client for fees, where his attorney transferred his duties to others without the authority or approval of the client. Instead of that situation, let us suppose

the attorney employed to collect the note had taken a partner, and the firm had made the collection, and remitted, retaining a stipulated fee. Could the client have recovered it from the firm? If not, it must be because the firm was entitled to it, as we think it would be. The case supposed and the one at bar are parallel in this respect.

II. The first contract between the parties was oral, and made in November, 1890. In January, 1891, the defendant wrote to Welsh a letter, from which the following is an extract:

"BUCYRUS, O., January 4, 1891.

"*James Welsh, Esq., c/o Dr. F. Welsh, Bloomington, Ill.*

"DEAR SIR:—What I desired my brother to say to you is that if the farm is sold at the price named, to wit, thirty thousand dollars, I would not be inclined to pay the commission offered you last summer. Of course I do not want you to work for nothing, and authorized an offer to you, even if sold at this moderate price, of three hundred dollars, payable in horse or horses."

Appellant contends that this writing supersedes the oral contract, and we think it may properly be so regarded, subject, however, to a proper construction in the light of other facts. It will be observed that this letter is addressed to Welsh at Bloomington, Illinois. Welsh went to Bloomington with a view to sell the land to one Blue, but without success. He had written defendant of his purpose, and the letter from which the extract is taken was in answer to it. It is claimed that the authority of Welsh to make the sale was limited to the attempt at Bloomington, and that, failing to make the sale there, his agency ceased. The record does not warrant the conclusion. At no time did the defendant intimate that the right to find a purchaser was limited as to persons or place. It was as

general as such a contract could be. It is true that Welsh in his letter of December 30, 1890, said that if he did not sell to Blue he would see other parties, and he thought he would make up a trade there before he left, but in no way does he intimate that if he failed he would not continue his effort. There is a further claim that the sale to Adkins was by defendant, and that he was not procured as a purchaser by plaintiffs. The evidence on that point is in plain conflict, and the question was in a fair way left to the jury, that must have found thereon for the plaintiffs.

III. It is urged that the plaintiffs did not comply with the conditions under which the sale was to be made, because there was not a sale of horses, agricultural implements, harness, etc. In the letter from which the extract is taken is the following:

"What I wish to accomplish is to sell, along with the farm, all the agricultural implements, harness, etc., at their present value. The buyer and myself will have no trouble in agreeing to their value. *First.* I do not wish to move the implements, nor do I wish to hold a public sale. *Second.* I wish to dispose of all or part of my horses at a price at least twenty-five per cent below the market. *Third.* If the stock is not sold it will be necessary to retain the use of the large barn and corrals attached until July 5, 1891, together with water and pasture for all the stock. I would also want the use of the track and track field until that date. *Fourth.* After July 5, the small barn, track field, and a less amount of water and pasture, until December, 1891." The conclusion that the sale of the stock, implements, etc., must be made with the farm, is unwarranted. The letter but expresses a wish to do so; and other parts of the letter show that he contemplated that he might not be able to do so, in which event he wished to make certain reservations. Again,

the letter indicates that the sale of implements was to be only on an agreement with him as to value.

IV.   After the trial had been in progress one day the plaintiff was allowed, against objections, to file an amended and substituted petition, one having been before filed.   Under our holdings, we think there was no abuse of discretion.   There is in fact no showing of prejudice because of the amendment.

V.   There are a number of complaints as to the admission of evidence.   We need to notice only two or three.   One Lincoln was a witness, who said that he was in Webster City in 1891.   He was then asked, "Did the plaintiff claim to have defendant's farm for sale at that time?"   He answered, "Yes."   The complaint is that it violates the rule whereby an agency may not be established by proof of the declarations of the agent to that effect.   Neither the question nor the answer were directed to that purpose.   The clear intent was to prove what he had done under the agency.   The agency is admitted in the answer, and the only question in that respect is its extent.   The above question is immediately followed by other evidence showing that one Jones was taken to see the farm, and tending to show that it resulted in finding Adkins as a purchaser.   The testimony was clearly proper.   The Jones referred to resides in Illinois, and he was a witness.   By him it was proven that he went with Hogue to see the farm; that he is a nephew of Adkins, who bought the farm; that at the request of Hogue, when he went back to Illinois, he talked with Adkins, and recommended the farm to him, and Adkins came to Iowa to see it.   Appellant quotes the following answer as objectionable, and as proving agency: "I told my uncle, Stanton Adkins, that Welsh & Hogue had this farm for sale; gave him their names and address.   Stanton Adkins asked me

whether Welsh & Hogue had it for sale or not. I told him 'Yes,' and he asked me about the farm in general, and I told him.'' To inform people that they had the the farm for sale was a necessary act in carrying out the object of the agency, and it was proper to be proven as a part of what was done to procure a purchaser. There is a clear misapprehension of the purposes of the testimony, in this case. The answer was proper as showing what had been done by plaintiff to sell the farm.

VI. The testimony of the defendant was by deposition and a part of it was a statement of his conversations with Adkins in their negotiations for the farm, in the absence of the plaintiffs, in regard to his purchase of the agricultural implements, and as to whether or not the sale would be such that he would be liable for a commission to Welsh. This part of the deposition was stricken out, and properly so. It is said that it showed the absolute good faith of the defendant. The issues involve no question as to good faith. It is purely a question of contract, and of performance under it.

There are complaints as to the instructions, but they are based largely on the theory of the case leading to the objections to evidence, and the construction of the contract, and we do not think it necessary to consider them separately. We find no error in the record, and the judgment is affirmed.